Martin B. Stecher, J.
The petitioner, as assignee for the benefit of creditors, has moved to settle its final account, to discharge itself and its surety from further liability hereunder, and for incidental relief including commissions, fees, and allowances. Although notice of the petition has been given to creditors variously interested in the estate, none has objected to the settlement of the account. It may be argued that the American judicial process contemplates adversary proceedings and that in the absence of opposition the relief requested should be granted. Such a contention would be most dubious in an equity proceeding (Debtor and ¡Creditor Law, § 20), and particularly so where the notice given to prospective adversaries — here the creditors —fails to inform them of significant relief requested (see 22 NYCRR 660.13 [a] [20]). To determine the sufficiency of the ‘ ‘ Notice of Hearing of [Settlement of Assignee’s Final Account ” we must examine the account itself.
What arouses immediate curiosity is the petitioner’s method of dealing with the accounts receivable. The assignor is or was a merchant selling to customers in foreign countries. Of its receivables, the petitioner has collected $2,992.60 and has designated as “uncollectible ”, by virtue of the alleged absence of documentation, receivables of $110,705.29. (These figures are *666 remarkable in the context of the total account in which allowed general unsecured claims exceed $120,000.) G-ross sums collected are approximately $20,500, of which tangible assets sold at auction produced approximately $7,900, recovered overpayment of taxes and interest income exceed $6,000, and a “ transfer of fund ”, otherwise unexplained, is approximately $3,500.
Although the petition does not expressly ask leave to abandon the “uncollectible” receivables, as a practical matter, such would ¡be the result if this account were finally settled, because the petitioner would be discharged from further liability. The notice to creditors informs them of the gross amount collected, the charges against the assets for expenses, commissions and requested attorneys’ and accountants’ fees, and the balance available to allowed general creditors, about 6 cents on the dollar. No mention, however, is made in the notice of the more than $100,000 of claims to be abandoned.
There is nothing in the statute which expressly designates the contents of a notice to creditors of final settlement of an assignee’s account, but within the context of the statute (Debtor and Creditor Law, § 15, suibd. 17) which permits the court to parallel accounting procedures in the Surrogate’s Court, the court has the right, and clearly the obligation, to require that notice of the object of the proceeding (cf. SOPA 306, suibd. 1, par. [d]) be given to the creditors.
'Section ,14 of the Debtor and Creditor Law imposes upon the assignee the duty “ to collect and reduce to money the property of the estate ”. The statute (Debtor and Creditor Law, § 19) gives to the creditors the corollary right to show upon a final accounting that any debt or claim “ was fraudulently or negligently sold, compounded or compromised” and provides that the “ assignee shall be charged with and be liable for, as part of the trust fund, any sum which might or ought to have been collected by him.” Certainly, the court assumes neither fraud nor neglect nor other impropriety; but the creditors may not be presumed to have acquiesced in this item of the account when the assignee who had the duty to disclose it to the creditors failed to do so. Accordingly, the settlement of this account will hot be entertained until due notice is given to the creditors of accounts receivable sought to be abandoned.
An examination of the account reveals that the assignee has failed to comply with the statute in other ways. (This account is not singled out as deviating from common practice, but rather as an example of the common practice of ignoring much of the statute in assignments euphemistically designated “ fop the *667 ¡benefit of creditors ”.) Thus, the statute (Debtor and Creditor Law, § 14) requires the assignee to “report promptly to the court any claims presented to him which are not provable, or are incorrect or false ”. Similarly, the same section requires the assignee to “report promptly for allowance all claims * * * (which are not disputed ”. It is thus the intention of
the statute that all of these items not wait three years to the filing of the final account, but that they be presented promptly to the court after the assignment. It is inappropriate for the assignee to present to the court for the first time on the final accounting, as is done here, disputed claims which may have to be litigated. The intent of the statute is that items which may be disputed be disposed of in advance of the final account.
The statute presupposes a prompt termination of the affairs of the estate and, where such is not practicable, that the assignee will ,‘ ‘file an interim report .within six months of assuming his duties unless excused by the court or unless the estate has been sooner distributed” (Debtor and Creditor Law, §§ 14, 15, subd. 10). No interim report has been filed here although more than three years have elapsed since the assignment (see 22 NYCEE 660.13 [a] [31]).
A schedule of claims against the estate which are allegedly overstated is part of the account. The accountant, however, now seeks, by papers submitted subsequent to the notice, to compromise one of the claims. It also appears that the accountant may have compromised other claims without identifying them as compromises in that the receivables owed by “ Casa DeLannoy ’ ’ have been collected to the extent of $1,600, but $1,500 of such receivables are deemed ‘ ‘ uncollectible ’ ’. The statute (Debtor and Creditor Law, § 12) requires notice to creditors of the proposed compromise, and none has been given in the notice to creditors issued here.
The scheme o,f the statute clearly is to bring disputed claims promptly before the court so that they may be adjudicated prior to the application for final settlement of the account. That has not been done here nor is it generally done in the procedures adopted by the Bar .which deals with such matters. The statute should be followed in the future. In view of the fact that such failure to observe the statute has been commonplace, the court will not reject this petition for these particular defects.
I have had other occasion to call to the attention of counsel what is — and what is not — a sufficient affidavit of services in support of an application for professional — attorneys’ or accountants’ — fees. The 15-page “petition” for legal fees is *668 as uninformative as its predecessors in other cases. Perhaps the problem is that it presents a somewhat diffuse history of the assignment rather than a concise record of the services which the attorneys rendered specifying the level of personnel involved (e.g., senior partner, associate, clerk, etc.) and. the time necessarily occupied. The court is not prepared to say that the sums requested are excessive or unjustified; they are merely inadequately supported.
The assignee is directed to ¡serve upon all creditors, in accordance with the order dated September 9, 1974, an amended notice of application for judicial settlement of its account, setting forth each item of relief .sought. The said notice shall be served within SO days following the publication of a notice of this decision in the New York Law Journal. The matter shall appear on the calendar of Special Term Part I of this court on the third day of .March, 1975, at which time it may ibe referred to me.
In the interim and prior to .giving the said notice to the ¡creditors, the attorneys may file any additional affidavits or documents which they deem appropriate to explain or justify the determination not to pursue the accounts receivable or to explain or justify fees or allowances requested or concerning any other matter of which the court should have notice.