**Gary COOPER et al.,
Plaintiffs-Appellees,**

v.

**UNION BANK, a Banking Corporation,
John Doe One to John Doe Ten,
Defendants-Appellants.**

**No. 73–1805.**

United States Court of Appeals,
Ninth Circuit.

Dec. 5, 1975.

Rehearing Denied Jan. 22, 1976.

---

Lee J. Cohen (argued), Cohen, Freeman & Feldman, Los Angeles, Cal., for defendants-appellants.

Howard P. Miller (argued), Buchalter, Nemer, Fields & Savitch, Los Angeles, Cal., for plaintiffs-appellees.

## OPINION

Before CHAMBERS, MERRILL and WALLACE, Circuit Judges.

MERRILL, Circuit Judge:

Union Bank has taken this appeal from judgment cancelling the unpaid balance on a promissory note executed by appellees upon the ground that the loan for which the note was executed was in violation of Regulation U, 12 C.F.R. § 221, promulgated by the Board of Governors of the Federal Reserve System pursuant to § 7 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78g.

Section 78g provides in part:

"(a) For the purpose of preventing the excessive use of credit for the purchase or carrying of securities, the Board of Governors of the Federal Reserve System shall, prior to October 1, 1934, and from time to time thereafter, prescribe rules and regulations with respect to the amount of credit that may be initially extended and subsequently maintained on any security * * *.

\* \* \* \* \* \*

(d) It shall be unlawful for any person [with certain exceptions not applicable here] to extend or maintain credit or to arrange for the extension or maintenance of credit for the purpose of purchasing or carrying any security, in contravention of such rules and regulations as the Board of Governors of the Federal Reserve System shall prescribe to prevent the excessive use of credit for the purchasing or carrying of or trading in securities in circumvention of the other provisions of this section. * * *"

Regulation U provides in part, § 221.-1(a):

"*Purpose credit secured by stock:* (1) * * * [N]o bank shall extend any credit secured directly or indirectly by any stock for the purpose of purchasing or carrying any margin stock in an amount exceeding the maximum loan value of the collateral * * *." (Footnotes omitted.)

The sole question presented on this appeal is whether, under the facts of this case, the district court was in error in holding that the loan was indirectly secured by stock.

Plaintiffs Gary Cooper,[1] Richard A. Schulman and one Kosman (not a party

---

1. Plaintiff Gary Cooper died after the filing of the complaint; upon stipulation of the parties, Sharleen Cooper as administratrix of his estate has been substituted as plaintiff in his place.

to this action) formed a venture under the name of Wilshire Mining Co., for the purpose of engaging in the "put-and-call" business which involved the purchasing of margin stocks. A loan was obtained from Union Bank for the purpose of purchasing margin stock and the note here involved was executed to cover that loan. Since, as a practical matter, sale of put-or-call options must be guaranteed by a member of the New York Stock Exchange to insure performance by the writer of the option, the venture arranged to conduct its business through Kleiner, Bell & Co., and, in order to secure guaranty by that firm, pledged to it all stocks purchased with funds borrowed from Union Bank. (Brokers are not subject to the restrictions respecting security that apply to banks.) Kosman was an officer of Kleiner, Bell and knowledgeable in the put-and-call business.[2] The loan agreement with the bank provided for monthly accountings, showing "securities positions," including those in the account maintained with Kleiner, Bell. Further it contemplated that Kosman would be the primary broker on the account and provided that should he cease to be such the loan would be immediately accelerated.

It is conceded that stocks did not directly secure the loan. The question is whether, under the terms of the loan agreement, the bank was *indirectly* secured by the stock purchased through Kleiner, Bell and pledged to that firm.

Regulation U, § 221.3(c), contains its definition of the term "indirectly secured." It provides:

"The term 'indirectly secured' includes any arrangement with the customer under which the customer's right or ability to sell, pledge, or otherwise dispose of stock owned by the customer is in any way restricted so long as the credit remains outstanding,

or under which the exercise of such right, whether by written agreement or otherwise, is or may be cause for acceleration of the maturity of the credit."

To us it is clear that there were no restrictions on the customer's right or ability to sell, pledge or otherwise dispose of the stock involved here. Indeed all stocks purchased by the venture with the funds borrowed from the bank were pledged to Kleiner, Bell. The district court, 354 F.Supp. 669, nevertheless read the definition broadly as including any arrangement by which (a) the borrower's use and rights with respect to the stock were not "unfettered" or were subject to restrictions by the lending bank, or (b) the lending bank was given any advantage or priority over other creditors in ability to apply stock owned by the customer, to the debt owed to the bank. The court held that in both respects the agreement with the bank established an arrangement that fell within the scope of the regulation as construed by the court. In so holding the court pointed to two features of the agreement:

First, the provisions for monthly accountings. The court stated: "This provision was intended to give the Bank current information about the holdings in the account. The Bank's constant monitoring of the securities positions in the Wilshire put and call business is one indication that the Bank looked to the stock as a source of repayment of its loans."

Second, the provision requiring Kosman to be the primary broker. The court stated: "The court finds * * * that the purpose of the requirement was to keep Kosman in control of the securities positions to ensure that they would be maintained as an adequate source of repayment for the bank's loans."

---

2. Since Kosman was prohibited by law and by the rules of the pertinent stock exchanges from maintaining a securities account in his own name, the Wilshire account was maintained in the names of Cooper, Schulman, and one Rosen (who was Kosman's brother-in-law). It is not contended that use of Kosman's firm or the substituting of his brother-in-law on the securities account were contrary to regulation. Even if they were, they would seem to offend for reasons wholly apart from those underlying Regulation U.

With general reference to Regulation U, the court concluded that a purpose was "to discourage banks from attempting to use any stock as a source of repayment of a loan made for the purpose of purchasing or carrying margin stocks * * *." The court was disturbed by its conviction that the bank was looking to the purchased stock as a source of repayment of the loan in event of default.[3]

■ We cannot accept that the features of the loan agreement singled out by the district court constituted the purchased stock indirect security for the loans, even under a broad reading of the definition. As we view it, the regulation contemplates an arrangement by which, at the least, the lender secures some measure of control over the borrower's assets or the borrower suffers some restriction on its right to deal with its assets. *Freeman v. Marine Midland Bank—New York,* 494 F.2d 1334 (2d Cir. 1974). The very concept of security hypothesizes default and recovery of the debt not out of the earnings of a successful venture but out of the remains of a failure.

■ Here the precautions taken by the Bank in its loan agreement in no way, directly or indirectly, provided any borrower restriction or lender control respecting assets.[4] Instead they were of the type that any prudent unsecured creditor upon a purpose loan would choose to take when, deprived of security, he must rely hopefully on the success of the venture. He would wish regular reassurance that the purpose of the loan, approved by the bank when it made the loan, was being carried out. He would wish reassurance that management of that purpose was in competent hands.

Here the monthly accounts served to give assurance that the purpose of the loan was being carried out. Putting Kosman, the one knowledgeable partner, in the place of primary broker assured competent management. It served to assure that no stock could be purchased or option given without Kosman's knowledge; borrowed funds could not be dissipated without his being aware of it and without his advice.[5]

The fact that the accounting also served to give to the bank inside information respecting assets—information not openly available to other unsecured creditors—does not serve to give "security" to the bank, even indirectly. Every creditor on a purpose loan, the purpose of which is to purchase property (whether it be an automobile, a piece of machinery or corporate stock) has the advantage over other unsecured creditors of knowing that that particular asset is in existence. If such advantage is to be eliminated the regulation would have to be construed to provide that stock bought with the proceeds of a purpose loan is to be deemed indirect security for

---

3. In *Freeman v. Marine Midland Bank—New York,* 494 F.2d 1334, 1339 (2d Cir. 1974), the court did note that certain facts supported an inference "that the bank was primarily relying on the stock for repayment." This reliance, however, did not exist in a vacuum apart from any restrictive arrangement. What the borrower there characterized as the "express understanding," *id.* at 1337, would, if honored by the borrower, have constituted a clear restriction on his rights respecting the purchased stock.

4. While there was a restriction on the stock in that, if Kosman ceased to be the primary broker, the loan would be immediately accelerated, this is not the sort of restriction at which § 221.3(c) of Regulation U is directed.

5. The court also noted with apparent disapproval the fact that Kosman was personally liable on his note to the bank. He was, however, one of the borrowing venturers. We do not think it can rationally be contended that in order to forego security the bank should have to forego the very debt itself. Kosman as a principal had no more control over the securities in the Kleiner, Bell account than did his partners. While his position as officer of the firm or as broker may have given him authority to deal with securities on behalf of his firm, it has not been shown to give him any right to exercise control over the securities for the protection of the bank. Even if the partners had had complete control of the stock, however, that fact would not have constituted the stock security for the bank in the absence of such an arrangement as Regulation U contemplates.

that loan. This would, in a roundabout fashion, effectively preclude all such purpose loans. The language with which we are concerned, "secured directly or indirectly by any stock," would be read out of the regulation, and the prohibition against the extending of credit for the specified purpose would be unconditional. We are unwilling to deal in such a ruthless fashion with this regulation.

We conclude that Regulation U was not violated in the manner assigned by the district court and that cancelling the outstanding balance on the note was error.

Reversed.