John R. FREEMAN, Plaintiff,

v.

MARINE MIDLAND BANK—NEW
YORK, Defendant.

No. 71 C 42.

United States District Court,
E. D. New York.

July 30, 1976.

Jay J. Gurfein, New York City, for plaintiff.

Barrington D. Parker, Jr., Sullivan & Cromwell, New York City, for defendant.

## MEMORANDUM AND ORDER

BRAMWELL, District Judge.

Defendant, Marine Midland Bank—New York (the "Bank") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff, John R. Freeman ("Freeman") cross moves to join the Aetna Casualty & Surety Company ("Aetna") as a party defendant and for partial summary judgment dismissing defendant's counterclaim pursuant to Rules 19 and 56 of the Federal Rules of Civil Procedure.

### I

In a complaint filed January 12, 1971, Freeman alleges that the Community Bank [1] extended credit to him for the purpose of purchasing and carrying stock registered and listed on national securities exchanges. Freeman contends that the extensions of credit were made in violation of Regulation U promulgated by the Board of Governors of the Federal Reserve System. 12 C.F.R. § 221 (1975). He further alleges that as a result of these loans he is indebted to the defendant and that this indebtedness is evidenced by certain "negotiable instruments" which he issued to the defendant. Freeman seeks a judgment declaring that these "negotiable instruments" are contracts which are void under Section 29(b) of the Securities and Exchange Act of 1934, 15

---

1. The Community Bank of Lynbrook, New York merged with the defendant herein, Marine Midland Bank—New York on September 30, 1970.

U.S.C. § 78cc(b). He also requests that the defendant surrender to the Court for cancellation any written instruments evidencing such debt. Defendant has counterclaimed in fraud for $88,943.77.

By notice of motion filed January 12, 1973, the Bank moved to dismiss the complaint for failure to state a claim upon which relief could be granted. The ground for the motion was that the complaint did not allege that the credit purportedly extended to Freeman was directly or indirectly secured by stock. By order dated February 28, 1973, the Honorable Anthony J. Travia granted the motion and dismissed the complaint. In an opinion dated March 25, 1974, the Second Circuit reversed Judge Travia's decision and remanded the case for further proceedings, holding that the record discloses a triable issue of fact as to whether the extensions of credit to Freeman were indirectly secured by stock. *Freeman v. Marine Midland Bank—New York*, 494 F.2d 1334 (2d Cir. 1974).

## II

As of May 10, 1968 Freeman was indebted to the Community Bank in the sum of $365,943.77 as a result of numerous extensions of credit. On that date Freeman executed a General Assignment for the Benefit of Creditors, naming the Community Bank as assignee.[2] In September, 1970 Jerome Murray, Esq. was appointed substitute assignee replacing the Community Bank. Among the claims presented to the assignee and substitute assignee was a claim for $365,943.77 by the Aetna Casualty & Surety Company as assignee of the Community Bank. By order to show cause dated January 23, 1973, the Marine Midland Bank—New York (then successor to the Community Bank) petitioned the Nassau County Court for settlement of its account as assignee of Freeman's assets. Freeman raised numerous objections to the Bank's petition which resulted in hearings before Judge Frank Altimari of the Nassau County Court.[3] In an Order and Opinion dated November 21, 1973, Judge Altimari granted the Bank's petition for settlement of its account.[4] In so doing the Court approved the various claims presented to the Bank as assignee, including Aetna's claim for $365,-943.77.[5] On March 12, 1975 the Appellate Term of the Supreme Court affirmed without opinion Judge Altimari's Order of November 21, 1973.[6]

By order to show cause dated October 12, 1973, Jerome Murray petitioned the Nassau County Court for settlement of his account as substitute assignee. Included again in the schedule of claims presented to the Court for review and approval was the assigned claim of Aetna. Freeman raised numerous objections which were rejected by Judge Altimari in an Opinion dated December 24, 1973, granting the substitute assignee's petition. On the same day Judge Altimari issued an Order authorizing a pro rata distribution of Freeman's assets to various creditors.[7] On November 21, 1974, the Appellate Term affirmed Judge Altimari's Order of December 24, 1973.[8]

In addition to the instant action there appears to be two pending state court proceedings which have flowed from Freeman's course of dealing with the Bank. In November, 1971 Freeman commenced another action against Marine Midland Bank—New York in Supreme Court, New York County, seeking damages as a result of alleged misconduct by the Bank while it

---

**2.** Defendant's Motion For Summary Judgment, Exhibit "A".

**3.** Defendant's Motion For Summary Judgment, Exhibits "B", "E".

**4.** Defendant's Motion For Summary Judgment, Exhibit "F".

**5.** Defendant's Motion For Summary Judgment, Exhibit "D", Schedule "G".

**6.** Defendant's Motion For Summary Judgment, Exhibit "G".

**7.** Defendant's Motion For Summary Judgment, Exhibit "J".

**8.** Defendant's Motion For Summary Judgment, Exhibit "L".

acted as assignee.[9] In November 1974, Aetna, as assignee of the Bank's claim against Freeman, brought an action against Freeman in Supreme Court, Nassau County seeking the sum of $260,405.59, the balance due on the original debt of $365,943.77.[10] It is averred that neither of these two state court proceedings has progressed beyond the pleading stage.[11]

### III

The Bank now moves for summary judgment on the following grounds: that the cause of action upon which the instant complaint is based was the subject of a prior, final state court adjudication and that therefore this action is barred by the doctrine of *res judicata* or, alternatively, collateral estoppel; that as a matter of law plaintiff is not entitled to the declaratory relief sought in the complaint; that plaintiff has failed to join the substitute assignee for the benefit of creditors and other indispensable parties; that plaintiff is not entitled to the remedy of rescission sought in the complaint; and that the addition of section 7(f), 15 U.S.C. § 78g(f) to the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78a *et seq.*, and the promulgation by the Federal Reserve Board of Regulation X, 12 C.F.R. § 224 (1975), has removed whatever basis may once have existed for the implication of a private cause of action for violation of the federal margin requirements.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In *Heyman v. Commerce and Industry Insurance Company*, 524 F.2d 1317 (2d Cir. 1975), the Second Circuit provided a thorough review of the principles relevant to the granting of summary judgment. There Chief Judge Kaufman stated in part:

. . . But, the "fundamental maxim" remains that on a motion for summary judgment the court cannot try issues of fact; it can only determine whether there are issues to be tried. *American Manuf. Mutual Ins. Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967); *Cali v. Eastern Airlines, Inc.*, 442 F.2d 65, 71 (2d Cir. 1971). Moreover, when the court considers a motion for summary judgment, it must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), with the burden on the moving party to demonstrate the absence of any material fact issue genuinely in dispute, *Adickes v. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). This rule is clearly appropriate, given the nature of summary judgment. This procedural weapon is a drastic device since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury. *Donnelly v. Guion*, 467 F.2d 290, 291 (2d Cir. 1972). *Heyman, supra*, at 1319, 1320.

Furthermore, the showing of a "genuine issue for trial" is ". . . predicated upon the existence of a legal theory which remains viable under the asserted version of the facts, and which would entitle the party opposing the motion (assuming his version to be true) to judgment as a matter of law." *McGuire v. Columbia Broadcasting System, Inc.*, 399 F.2d 902, 905 (9th Cir. 1968). The determination as to whether a material fact is in dispute is indeed a difficult task. In this regard the Second Circuit has stated ". . . [T]he law provides no magical talisman or compass that will serve as an unerring guide to determine when a material issue of fact is presented. As is so often true in the law, this is a matter of informed and properly reasoned judgment." *American Manufacturers Mutual Insurance Com-*

---

**9.** Defendant's Motion For Summary Judgment, Exhibit "C".

**10.** Plaintiff's Cross Motion, Exhibit "A".

**11.** Plaintiff's Affidavit In Opposition To Defendant's Motion For Summary Judgment, at 6.

pany v. American Broadcasting-Paramount Theatres, Inc., 388 F.2d 272, 279 (2d Cir. 1967), cert. denied, 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 752 (1972). After having carefully considered the affidavits and documents presented, this Court finds that the complaint is predicated upon a viable legal theory and that the record demonstrates genuine material issues of fact; therefore, defendant's motion for summary judgment is denied.

## RES JUDICATA AND COLLATERAL ESTOPPEL

■■■ The threshold question to be considered is whether federal law or state law governs the application of the doctrines of res judicata and collateral estoppel in this federal court action.[12] It generally has been held that state law controls the application of the doctrines of res judicata and collateral estoppel in a diversity action in federal court where the issues involved in the prior judgment required the application of State law. See Lowell v. Twin Disc., Inc., 525 F.2d 767 (2d Cir. 1975); Ritchie v. Landau, 475 F.2d 151 (2d Cir. 1973). Here the Bank seeks to attach res judicata or collateral estoppel effect to the state court assignment proceedings, contending that the central issue in the instant case (whether the Bank violated the federal margin regulations) could have been raised and determined in the prior proceedings. The instant case is a federal action based upon federal question jurisdiction where the defendant seeks to attach conclusive effect to a state court judgment. · As the issue sought to be precluded would have required the application of federal law had it been raised in the state court proceedings, it is the opinion of this Court that federal law governs the application of the doctrines of res judicata and collateral estoppel in the instant federal action. Heiser v. Woodruff, 327 U.S. 725, 665 S.Ct. 853, 90 L.Ed. 970, rehearing denied 328 U.S. 879, 66 S.Ct. 1335,

90 L.Ed. 1647 (1946); American Mannex Corporation v. Rozands, 462 F.2d 688 (5th Cir. 1972), cert. denied 409 U.S. 1040, 93 S.Ct. 524, 34 L.Ed.2d 489.

In Saylor v. Lindsley, 391 F.2d 965 (2d Cir. 1968), the Second Circuit articulated the elements of res judicata as follows:

> The general rule of res judicata is that a valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand. It operates to bind the parties both as to issues actually litigated and determined in the first suit, and as to those grounds or issues which might have been, but were not, actually raised and decided in that action. The first judgment, when final and on the merits, thus puts an end to the whole cause of action. See Cromwell v. County of Sac, 94 U.S. [4 Otto] 351, 24 L.Ed. 195 (1877); Commissioner of Internal Revenue v. Sunnen, 333 U.S. 591, 597, 68 S.Ct. 715, 92 L.Ed. 898 (1948); 1B Moore's Federal Practice Par. 0.405[1] (1965 ed.)

391 F.2d at 968.

Freeman contends, inter alia, that: The Regulation U issue was never raised in the state proceedings; the instant action presents a different cause of action than that presented in the prior proceedings; the state court proceedings and the instant action involve different parties; and in the absence of a compulsory counterclaim requirement he was not obligated to present the Regulation U defense in state court.

■■■ Neither party has presented the Court with any case law concerning the res judicata or collateral estoppel effect to be attached to the allowance of a claim in an assignment for the benefit of creditors. After exhaustive research the Court has not found any cases directly on point.[13] At the

12. For a general discussion of the federal cases which consider whether state of federal law control the applicability of the doctrines of res judicata or collateral estoppel in an action in federal court, see Annot., 19 A.L.R.Fed. 709 (1974).

13. For an excellent discussion of the conclusive effect to be given to an allowance of a claim in a bankruptcy proceeding see, Moore, Res Judicata and Collateral Estoppel in Bankruptcy, 68 Yale L.J. 1 (1958). See also, 1 B, Moore, Federal Practice par. 0.419[3.–5] (2d ed. 1974).

outset it must be noted that the Bank concedes and the record demonstrates that the issue of whether the Bank violated Regulation U by its extensions of credit to Freeman was never expressly raised or litigated in the state proceedings. Therefore, even if this Court were to find that the state proceedings and the instant suit involve different causes of action,[14] the doctrine of collateral estoppel would not prevent Freeman from raising the Regulation U issue in the instant suit. *Roth v. McAllister Bros., Inc.*, 316 F.3d 143 (2d Cir. 1963); *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 844 (3d Cir. 1974); 1. B J. Moore, Federal Practice Par. 0.443[1] (2 ed. 1974). In connection with the determination of whether the instant action is barred by the state court assignment proceedings it is necessary to briefly review the operation of a general assignment for the benefit of creditors under Article 2 of the New York Debtor and Creditor Law as well as the unique circumstances presented by this case.

■ A general assignment for the benefit of creditors has been defined as "a voluntary transfer by a debtor of all his property, to a trustee of his own selection, for administration, liquidation, and equitable distribution among his creditors." 28 N.Y.Jur., Insolvency § 7 at 569. It is distinguishable from a federal bankruptcy proceeding in that no discharge from the assignor's debts is obtainable in an assignment for the benefit of creditors. See *Pavone Textile Corporation v. Bloom*, 195 Misc. 702, 90 N.Y.S.2d 785 (Sup.Ct.1949), *aff'd.* 302 N.Y. 206, 97 N.E.2d 755, *aff'd.* 342 U.S. 912, 72 S.Ct. 357, 96 L.Ed. 682. After a claim is allowed the debtor-assignor continues to remain liable for the unpaid balance of the debt, and the creditor may resort to and pursue such remedies as may be available. *Delta Trading Corp. v. Kohn & Son Co., Inc.*, 28 Misc.2d 894, 215 N.Y. S.2d 607 (Sup.Ct.1961); *Kay Mfg. Corp. v. Weiss*, 11 Misc.2d 164, 168 N.Y.S.2d 330 (Sup.Ct.1957); 28 N.Y.Jur., Insolvency § 19

at 586. Upon assignment the assignee takes title to the debtor's estate as trustee for all the creditors under the court's supervision and the estate is in *custodia legis*. *In Re John C. Creveling & Son Corporation*, 259 App.Div. 351, 19 N.Y.S.2d 378 (2d Dept. 1940) *aff'd.* 283 N.Y. 760, 28 N.E.2d 975.

■ The New York Debtor and Creditor Law specifically empowers the court to adjudicate the validity of claims and to allow or disallow them. N.Y. Debtor and Creditor Law § 15 (McKinney 1975). Moreover, the court is granted broad equity powers to effectuate the administration of the estate. N.Y. Debtor and Creditor Law § 20 (McKinney 1975). *See* 23 Carmody-Wait 2d, General Assignment To Creditors § 142:61; *Faber Cement Block Co., Inc. v. Realty Corp. et al.*, 425 F.2d 223 (2d Cir. 1970). With respect to the allowance or disallowance of claims, the assignor is not an active participant. *See* 28 N.Y.Jur., Insolvency § 45 at 628; 23 Carmody-Wait 2d, General Assignment To Creditors § 142:29. All property and every right of the assignor which he may properly convey or assign passes to the assignee for the benefit of creditors. It is the duty of the assignee to promptly report to the court any claims presented to him which are incorrect, undisputed or not provable. N.Y. Debtor and Creditor Law § 14 (McKinney 1975). *See Filartex Fabrics Co., Inc. v. New York Credit Man's Adjustment Bureau, Inc.*, 80 Misc.2d 665, 364 N.Y.S.2d 687 (Sup.Ct.1974). It is within the discretion of the court to order a jury trial or a trial before a referee of a disputed claim. N.Y. Debtor and Creditor Law § 21 (McKinney 1975).

■ After considering the statutory scheme and the proceedings before Judge Altimari in the Nassau County Court, it appears that the elements required to support the Bank's *res judicata* defense have been met. *Saylor v. Lindsley, supra; Zdanok v. Glidden Company, Durkee Foods Di-*

---

14. Crucial to the application of the doctrine of collateral estoppel is that the two suits in question must involve different causes of action. *United Shoe Machinery Corp. v. United States,*

258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708; *Siegel v. National Periodical Publications, Inc.*, 508 F.2d 909, 913 n. 1 (2d Cir. 1974); 1 B Moore, Federal Practice par. 0.441[2] (2d ed. 1974).

*vision,* 327 F.2d 944 (2d Cir. 1964), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *Kreager v. General Electric Company,* 497 F.2d 468 (2d Cir. 1974). Presently, Freeman seeks to have this Court declare invalid his $365,943.77 debt to the Bank. This is the same debt which was apparently "undisputed" in the assignment proceedings and allowed by the Nassau County Court. It is therefore the opinion of this Court that both proceedings involve the same cause of action.[15] Indeed, the allowance of the subject claim by virtue of Judge Altimari's Orders settling the assignee's and substitute assignee's accounts constituted a final judgment on the merits. Finally, it is the Court's opinion that for *res judicata* purposes both actions involve the same parties. Despite the finding of these elements it is important to consider the equity and public policy principles which temper the doctrine.

Numerous courts including the Second Circuit have acknowledged that if applied inflexibly, *res judicata* principles can at times result in unwarranted hardship. *See La Societe Anonyme des Parfums LeGalion v. Jean Patou, Inc.,* 495 F.2d 1265, 1276 (2d Cir. 1974); *Bronson v. Board of Education of the City School District of Cincinnati,* 525 F.2d 344, 349 (6th Cir. 1975). "While the doctrine of *res judicata* is meant to foster judicial efficiency and protect defendants from the oppression of repeated litigation, it should not be applied inflexibly to deny justice." *Smith v. Pittsburgh Gage and Supply Company,* 464 F.2d 870, 874 (3d Cir. 1972). The doctrine is subject to the "overriding public policy that 'a party must not be deprived of an actual opportunity to be heard.'" *Menendez v. Saks and Company,* 485 F.2d 1355 (2d Cir. 1973), *cert. granted sub nom.,* 416 U.S. 981, 94 S.Ct. 2382, 40

L.Ed.2d 758, *rearg. granted,* 422 U.S. 1005, 95 S.Ct. 2624, 45 L.Ed.2d 668. It has been recognized that *res judicata* is not a "wholly inflexible" doctrine and that under certain circumstances public policy may mandate its rejection. *Schlegel Manufacturing Co. v. U.S.M. Corp.,* 525 F.2d 775, 778 (6th Cir. 1975). Professor Moore states as follows:

> Although, on the whole, the doctrines *res judicata* and collateral estoppel are strictly applied, they have been occasionally rejected or qualified in cases in which an inflexible application would have violated an overriding public policy or resulted in manifest injustice to a party. Courts recognize that the doctrines of *res judicata* and collateral estoppel express a salutary policy of benefit to society and to the parties of putting an end to litigation, but are not inexorable rules of law. And have, on rather rare occasions, weighed the policy of ending litigation against another policy which would be abrogated by a mechanical application of *res judicata* or collateral estoppel.[16]

The foregoing principles must be considered in connection with the apparently novel circumstances of this case.

Freeman contends that there was no actual opportunity to raise and litigate the Regulation U defense at the assignment proceedings. It is noted that the first assignee in the state proceedings was the Bank, Freeman's largest creditor. Freeman contends that it could hardly be expected that the Bank would raise the Regulation U defense in opposition to its own claim. The substitute assignee, Jerome Murray, was counsel to the Bank at one point in the assignment proceedings. Further, it is averred that Murray is presently counsel to Aetna, the Bank's assignee, in its

---

**15.** Recently in *Herendeen v. Champion International Corporation,* 525 F.2d 130, 133–34 (2d Cir. 1975) the Second Circuit noted that the relevant criteria for determining whether causes of action are the same for *res judicata* purposes are as follows: "whether a different judgment in the second action would impair or destroy rights or interests established by the judgment entered in the first action, whether

the same evidence is necessary to maintain the second cause of action as was required in the first, and whether the essential facts and issues in the second were present in the first" (footnotes omitted). *See also, Ruskay v. Jensen,* 342 F.Supp. 264, 269 (S.D.N.Y.1972).

**16.** 1 B Moore's Federal Practice par. 0.405[11] (2d ed. 1974) at 783–84.

state court suit against Freeman.[17] Indeed, Freeman alleges that he requested Murray to raise the Regulation U defense in opposition to the Bank's claim and that Murray refused to do so.[18]

■ The Bank contends that Freeman participated extensively in the assignment proceedings and could have raised the Regulation U defense. Freeman opposed the substitution of Jerome Murray as assignee,[19] sought to set aside the assignment as a void contract, and filed numerous objections to the accountings of the assignee and substitute assignee. It appears that the only issues presented before Judge Altimari concerned the propriety of the conduct of the assignee and substitute assignee. Irrespective of Freeman's ostensible participation in the assignment proceedings, it is unclear whether he could have interposed the Regulation U defense in opposition to the Bank's claim. After having considered the statutory scheme of Article 2 of the New York Debtor and Creditor Law as well as the facts adduced in the affidavits, it is the opinion of this Court that a genuine material issue of fact is presented, *viz.,* whether the Regulation U defense could have been raised in the state court assignment proceedings. To mechanically apply *res judicata* at this stage would impose a manifest injustice upon the plaintiff. Indeed, one of the underpinnings of the doctrine is that a party must not be deprived of "an actual opportunity to be heard". *Mendenez v. Saks and Company, supra* at 1364. Accordingly, defendant's motion for summary judgment on the ground of *res judicata* is denied without prejudice, with leave to renew upon further factual development of the record.

## DECLARATORY JUDGMENT AND INDISPENSABLE PARTIES

Defendant contends that this is an inappropriate case for granting declaratory relief. It alleges that declaratory relief would constitute a serious interference with state court proceedings and would inject uncertainty into rights and issues previously litigated and determined in other forums. Defendant further urges that declaratory relief is inappropriate because the plaintiff has failed to join the substitute assignee for the benefit of creditors and other indispensable parties. Freeman argues that a declaratory judgment holding void his debt to the Bank would dispose of the counterclaim in the present case as well as Aetna's state court action against Freeman, and thereby would avoid a multiplicity of actions. Freeman contends that no parties other than Aetna are necessary for a proper adjudication of this action.

■ The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that in "a case of actual controversy within its jurisdiction, . . . any court of the United States, . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Rule 57 of the Federal Rules of Civil Procedure provides that the ". . . existence of another adequate remedy does not preclude a judg-

---

17. Affidavit of John R. Freeman, at 5.

18. Affidavit of John R. Freeman, at 4; Plaintiff's Memorandum In Support of Cross Motion, at 10–11. It should not be inferred that this Court is attempting to raise a conflict of interest issue with respect to the assignee and substitute assignee. After a hearing to determine whether the substitute assignee should be surcharged for breach of fiduciary duty, Judge Altimari rejected Freeman's contention that Murray did not act in the best interest of the estate "because of a divided loyalty." Judge Altimari's reasoning is somewhat perplexing as he states: "The former assignee is by far the largest single creditor in this estate. Almost anything Mr. Murray would do to the detriment of the estate would be to the detriment of his alleged other loyalty, Community Bank." Defendant's Motion For Summary Judgment, Exhibit "J" at 5. This reasoning compels anything but the conclusion that Murray had an interest in vigorously opposing the Bank's claim.

19. It is noteworthy that in opposition to the motion to substitute Jerome Murray as assignee, Freeman contended that he named the Community Bank as the original assignee in consideration of an alleged promise by the Bank to drop any claims which it had against him. Affidavit of Francis Becker, at 3–4.

ment for declaratory relief in cases where it is appropriate." The Second Circuit has recognized that ". . . the principal purpose of a declaratory judgment is to clarify and settle disputed legal relationships and to relieve uncertainty, insecurity and controversy." *Broadview Chemical Corporation v. Loctite Corporation*, 474 F.2d 1391, 1393 (2d Cir. 1973); *see also Aetna Casualty & Surety Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937).

The granting of a declaratory judgment rests in the sound discretion ·of the trial court exercised in the public interest. *Public Service Commission v. Wycoff Co.*, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291 (1952). *See*, 10 Wright and Miller, Federal Practice and Procedure: Civil § 2759. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co. v. Pacific Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1940).[20] Certainly, this Court is aware of the fact that public policy militates against any action which would impair federal-state relationships. *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); *Beacon Construction Company, Inc. v. Matco Electric Co., Inc.*, 521 F.2d 392, 397 (2d Cir. 1975); 6A Moore's Federal Practice Par. 57.08[7] (2d ed. 1974).

It is plaintiff's position that he filed the instant action only after he could not persuade the substitute assignee for the benefit of creditors to raise the Regulation U defense against the Bank's claim. Although the Bank's claim was allowed in the assignment proceedings, there presently exists a serious question as to whether there was an opportunity to raise the Regulation U defense. It therefore appears that an actual controversy existed when this action was commenced and that this controversy has not become moot. *See* 6A Moore's Federal Practice Par. 57.13 (2d ed. 1974). Indeed, Freeman was not discharged from his debt to the Bank, and Aetna still has a viable action against him in state court. Moreover, the pendency of Aetna's state court action and the Bank's counterclaim in this action indicates that the precise legal relationship between those parties and Freeman is still in dispute. Given all of the circumstances presented, this appears to be a proper action for declaratory relief.

Defendant urges that declaratory relief would be improper because of plaintiff's failure to join various indispensable parties. Whether a nonparty is necessary for a just adjudication and should therefore be joined is determined by Rule 19(a) of the Federal Rules of Civil Procedure.[21] "Notwithstanding the enumerated factors in Rule 19(a), which a court must, of course, take into account, there is no definite method for determining whether a nonparty must be joined." *Yonofsky v. Wernick*, 362 F.Supp. 1005, 1022 (S.D.N.Y.1973). This determination must turn on the particular facts of each case. *Kaplan v. International Alliance of Theatrical and Stage Employees and Motion Picture Machine Operators of the United States and Canada*, 525 F.2d

**20.** Quoted in *Beacon Construction Company, Inc. v. Matco Electric Company, Inc.*, 521 F.2d 392, 397 (2d Cir. 1975).

**21.** Rule 19(a) provides:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or

impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

1354 (9th Cir. 1975). Thus, any determination must consider the overall policy considerations which underlie the rule. Three basic objectives of the rule are "(1) avoidance of unnecessary or multiple litigation; (2) providing complete relief to the parties before the court; and (3) protection of the rights and interests of any absent parties." *Yonofsky v. Wernick, supra,* at 1023. The Second Circuit recently has stated that Rule 19 ". . . involved a balancing of interests—those of the parties and of the outsider, those of the public and of the court in seeing that the litigation is both effective and expeditious, . . . while taking into account 'equity and good conscience'." *Kamhi v. Cohen,* 512 F.2d 1051, 1054 (2d Cir. 1975).

█ Defendant argues that Jerome Murray as well as the claimants in the assignment proceedings are indispensable parties. Defendant contends that a determination made in Murray's absence would impair his ability to protect his alleged interest in this action and would leave him subject to the risk of incurring multiple or inconsistent obligations within the meaning of Rule 19(a)(2), Fed.R.Civ.Pro. It is further alleged that any determination made in the absence of the claimants might adversely affect their rights as established in the assignment proceedings. It is this Court's opinion that the joinder of neither Murray nor the claimants is necessary for a just adjudication of this action. Murray does not appear to have an interest in this action as he was never involved in his personal capacity and his fiduciary capacity terminated upon the settlement of the estate by the Nassau County Court. Even if Murray were found to have an interest in the instant action it does not appear possible for him to incur multiple or inconsistent obligations. This is not an action against the estate nor is it an action to personally surcharge Murray. Moreover, it is inconceivable that the claimants would be adversely affected by the outcome of this action. If Freeman loses they would not be affected. If Freeman prevails claimants would be entitled to an additional distribution of funds.

At the present time it seems that the Aetna Casualty & Surety Company is the only nonparty necessary for a just adjudication of this action. As assignee of the Bank's claim against Freeman, Aetna most certainly has an interest in the outcome of the action. Accordingly, plaintiff's motion to join Aetna as a party defendant to this action is granted.

█ Plaintiff also has moved for partial summary judgment dismissing the Bank's counterclaim. Plaintiff contends that if the Bank made a complete assignment of its chose in action against Freeman to Aetna, then the Bank has no right to maintain its counterclaim. Presently, this Court does not have before it any documentary evidence indicating the nature of the assignment to Aetna. As indicated by the plaintiff, the assignment might be conditional, contingent, complete, or incomplete. Plaintiff even concedes that it is uncertain at this time who is the proper party defendant. It is apparent that the propriety of the Bank's counterclaim may not be considered until Aetna is brought into this action. At that time the Court will have an opportunity to determine the nature of the assignment to Aetna. Accordingly, plaintiff's motion to dismiss the counterclaim is denied without prejudice, with leave to renew.

## THE EFFECT OF SECTION 7(f) AND REGULATION X

Defendant contends that the addition of section 7(f), 15 U.S.C. § 78g(f) to the Securities Exchange Act of 1934 (the "Act") 15 U.S.C. §§ 78a *et seq.,* and the promulgation by the Federal Reserve Board of Regulation X, 12 C.F.R. § 224 (1975) has removed whatever basis may once have existed for the implication of a private cause of action for violation of the federal margin requirements.

Section 7 of the Act authorizes the Board of Governors of the Federal Reserve System to "prescribe rules and regulations with respect to the amount of credit that may be initially extended and subsequently main-

tained on any security." [22] Pursuant to this authority the Board has promulgated rules regulating the extension of credit by broker-dealers (Regulation T),[23] banks (Regulation U),[24] and other lenders (Regulation G).[25] In general these rules set a maximum loan value for securities serving as collateral when purpose credit is extended. In 1970, section 7(f) was added to the Act, making it unlawful to obtain or receive credit in violation of section 7 or the rules and regulations promulgated thereunder. In 1971, Regulation X was promulgated, making it a violation to obtain or receive credit in a transaction which does not conform to Regulations G, T, or U.[26]

The promulgation of Regulation X has indeed thrown into doubt the future of private causes of action for violation of federal margin requirements.[27] In *Pearlstein v. Scudder & German*, 429 F.2d 1136 (2d Cir. 1970), *cert. denied*, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971) ("Pearlstein I"), the Second Circuit held that a customer has a private right of action against his broker for violation of federal margin regulations, irrespective of the customer's sophistication or knowing participation in the transaction. Despite a vigorous dissent by Judge Friendly, the Second Circuit reversed the judgment entered for the broker and remanded the case to the district court for a trial on the issue of damages. However, in a subsequent opinion where the Second Circuit reviewed the measure of damages applied by the district court on remand, it was stated that the basis for the holding in *Pearlstein I* might have been undermined. *Pearlstein v. Scudder & German ("Pearlstein II")* 527 F.2d 1141 (2d Cir. 1975). The Court expressly stated that the addition of section 7(f) to

the Act and the promulgation of Regulation X has ". . . cast doubt on the continued viability of the rationale of our prior holding." 527 F.2d 1141, 1145 n. 3. In expressing doubt about the validity of its prior holding in *Pearlstein I*, the *Pearlstein II* court relied upon *Bell v. J. D. Winer & Co., Inc.*, 392 F.Supp. 646 (S.D.N.Y.1975). In that case, after carefully analyzing the legislative history of section 7(f), Judge Tyler concluded that the Congress which passed section 7(f) ". . . was uncertain as to whether the original § 7 was ever intended to mean what the *Pearlstein* court interpreted it to mean." 392 F.Supp. 646, 653.

■ This Court is most certainly impressed with defendant's compelling argument. As Regulation X causes a borrower to be equally culpable with a lender where the violation is knowing, it would appear impossible for such a lender to prevail in a rescission action under section 29(b) of the Act. Nevertheless, this Court is precluded from considering this issue because the Second Circuit has explicitly ruled that Regulation X is not applicable to the facts of this case. When the Second Circuit reversed the prior dismissal of this action by Judge Travia, it stated as follows:

> All of the events giving rise to this action took place prior to the effective date of section 7(f) . . ., and prior to the promulgation of Regulation X . . . We therefore need not determine the effect of Regulation X, which makes the knowing borrower particeps criminis with the lender in a Regulation U violation, on our holding in *Pearlstein v. Scudder & German*, 429 F.2d 1136 (2d Cir. 1970), *cert. denied*, 401 U.S. 1013, 91 S.Ct. 1250, 28 L.Ed.2d 550 (1971), the basis for this action.[28]

---

**22.** 15 U.S.C. § 78g(a) (1975).

**23.** 12 C.F.R. § 220 (1975).

**24.** Id. § 221 (1975).

**25.** Id. § 207 (1975).

**26.** See Note, Regulation X and Investor-Lender Margin Violation Disputes, 57 Minn.L.Rev. 208 (1972).

**27.** An excellent discussion of the possible impact of Regulation X upon private causes of action may be found in Note, Regulation X: A Complexis, 50 Notre Dame Lawyer 136 (1974).

**28.** 494 F.2d 1334, 1337–38.

This Court can not avoid the binding effect of the Second Circuit's express ruling, that Regulation X does not apply retroactively to the facts of this case. *See also, Stonehill v. Security National Bank,* 68 F.R.D. 24, 41 (S.D.N.Y.1975). This Court therefore may not consider defendant's argument.

RESCISSION UNDER SECTION 29(b) OF THE ACT

██  Finally, defendant contends that it is entitled to summary judgment because the plaintiff, as a matter of law, is not entitled to the relief requested in the complaint. Plaintiff requests a judgment declaring that his debt to the Bank is void under section 29(b) of the Act, 15 U.S.C. § 78cc(b). This section provides in part:

Every contract made in violation of any provision of this chapter or of any rule or regulation thereunder . . . and every contract . . . the performance of which involves the violation of . . . any provision of this chapter or any rule or regulation thereunder, shall be *void* (1) as regards the rights of any person who, in violation of any such provision, rule, or regulation, shall have made or engaged in the performance of any such contract . . . (emphasis added).

This section has been interpreted to make such contracts voidable at the option of the innocent party. *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 387–388, 90 S.Ct. 616, 623, 24 L.Ed.2d 593, 603–604 (1970); *Greater Iowa Corp. v. McLendon,* 378 F.2d 783, 792 (8th Cir. 1967); *Royal Air Properties, Inc. v. Smith,* 312 F.2d 210, 213 (9th Cir. 1962). This interpretation has permitted the investor, at his option, to void the contract as a defense to a lender's suit, to sue on the contract for damages, to enforce the contract, or to seek rescission. *See* Regulation X and Investor-Lender Margin Violation Disputes, 57 Minn.L.Rev. 208, 214 (1972).

Defendant contends that even if the plaintiff prevailed in establishing a Regulation U violation, he would not be entitled to a cancellation of his debt. It is argued that basic to an action for rescission of a contract is that the parties must be returned to the *status quo ante.* Defendant therefore concludes that the plaintiff would be obligated to return the principal of the loan which he claims to have received.

██  There appears to be a split of authority with respect to whether a bank that is sued for rescission of a loan contract violative of Regulation U is entitled to a return of the principal.[29] It is now settled that a court should apply principles of equity when considering a rescission action under section 29(b). *Mills v. Electric Auto-Lite Co., supra.* In the words of Judge Friendly, section 29(b) ". . . was a legislative direction to apply common-law principles of illegal bargain." *Pearlstein v. Scudder & German, supra,* 429 F.2d at 1149. "In deciding how to fashion a remedy in the area of illegal bargains, the type and degree of illegality become highly important factors." *Occidental Life Insurance Co. of North Carolina v. Pat Ryan & Associates, Inc.,* 496 F.2d 1255, 1266 (4th Cir. 1974). It is this Court's opinion that the determination of a remedy in this case under section 29(b) will require a careful balancing of the equities. *Cf. Tartell v. Chelsea National Bank,* 351 F.Supp. 1071, 1077, n. 2 (S.D.N.Y. 1972). At this point such a determination would be premature. *Stonehill v. Security National Bank, supra* at 38. It is possible that the conduct of both parties in this case might reflect some degree of culpability. This Court therefore must reject defendant's contention that plaintiff, as a matter of law, is not entitled to the relief requested.

---

**29.** Two leading cases holding that a bank is entitled to a return of the principal are *Goldman v. Bank of Commonwealth,* 467 F.2d 439, 446 (6th Cir. 1972), and *Landry v. Hemphill, Noyes & Co.,* 473 F.2d 365, 372 (1st Cir. 1973), *cert. denied,* 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 237. Cases holding that the plaintiff-borrower is entitled to retain the principal include: *Grove v. First National Bank of Herminie,* 489 F.2d 512 (3d Cir. 1973); *Serzysko v. Chase Manhattan Bank,* 290 F.Supp. 74 (S.D.N.Y.1968), *aff'd. mem.,* 409 F.2d 1360 (2d Cir. 1969), *cert. denied,* 396 U.S. 904, 90 S.Ct. 218, 24 L.Ed.2d 180 (1969); and *Cooper v. Union Bank,* 354 F.Supp. 669 (D.C.Cal.1973), *rev'd. on other grounds,* 527 F.2d 762 (9th Cir. 1975).

## IV

To summarize: plaintiff's motion to join the Aetna Casualty & Surety Company as a party defendant is granted; plaintiff's motion to dismiss the Bank's counterclaim is denied without prejudice; defendant's motion for summary judgment is denied with leave for the defendant to renew its contention that the instant action is barred by the doctrine of *res judicata*.

SO ORDERED.