OPINION OF THE COURT
Frank S. Rossetti, J.
This motion, brought on by an order to show cause, is to set aside and vacate a would-be settlement of a trust action under article 3-A of the Lien Law, as well as for further, related relief. The subject trust action was commenced January 7, 1975 by New York Plumbers’ Specialties Co., Inc. (Plumbers) as sole plaintiff against Chase Manhattan Bank (Chase) as sole defendant.[1] In said action, Plumbers *198 alleged Chase received payments totaling $80,340.50 from general contractor Gico Construction Co.-Beech Haven Builders Inc. (Gico-Beech) as repayment of loans made by Chase to a subcontractor of Gico-Beech, namely, Bellmore Plumbing & Heating, Inc. (Bellmore). Plumbers, a supplier for Bellmore, contends that these payments by Gico-Beech were diversions of Bellmore trust assets in violation of the Lien Law. Said action was allegedly settled June 12, 1976 before a Judge of this court and so marked on June 24, 1976.
The instant motion is brought by D & F Masons, Inc. (D & F), a subcontractor of Gico-Beech, and by Atlantic Hardware & Supply Corp. (Atlantic), a supplier of Gico-Beech. They contend that said settlement of the trust action was invalid because the statutory requirements of court approval and notice to trust beneficiaries were not met. (See Lien Law, § 77, subd 7.) Movants argue in essence that (1) the payments to Chase by Gico-Beech were improper expenditures of Gico-Beech’s trust assets; (2) Chase was a transferee thereof with knowledge or notice of these improper diversions; and (3) Chase is thereby answerable to the beneficiaries or claimants of that trust. [2] Hence they request that (a) the alleged settlement of the trust action be set aside and vacated;[3] (b) Plumbers account to the beneficiaries of the Gico-Beech trust for any settlement proceeds received from Chase;[4] and (c) a hearing be held as *199 to the trust violations asserted in said trust action together with other trust claims alleged in companion actions arising from the same construction project (see n 1, p 197, supra).
Plumbers and Chase, the plaintiff and defendant, respectively, in the subject trust action, oppose this motion basically on the grounds that neither movants nor any other parties in the said companion actions are entitled to any relief with respect to said action. The thrust of their arguments is that the subject trust action was for the alleged diversion to Chase of Bellmore trust assets, not Gico-Beech trust funds, and thus the only parties entitled to complain with respect to the apparent irregularities in the settlement are beneficiaries of the Bellmore trust, not beneficiaries of the Gico-Beech trust. It is undisputed that movants and the other parties in the said companion actions are all beneficiaries of the trust of Gico-Beech (or of trusts of subcontractors other than Bellmore) and therefore not authorized by section 77 of the Lien Law to enforce the Bellmore trust. Thus the primogenial question on this motion is whether the payments from Gico-Beech to Chase constituted improper diversions of Gico-Beech trust funds or of Bellmore trust assets.
The resolution of this question calls for a proper appreciation of the trust fund provisions of the Lien Law. The general purpose of these provisions is to protect contractors, subcontractors, architects, engineers, surveyors, laborers and materialmen (see Lien Law, §71, subds 1, 2, par [a]; subd 3, par [a]; § 2, subd 5) by assuring, or at least by making more certain, that those whose skill, labor and materials create an improvement are in fact paid, or at least equitably compensated, for their skill, labor and materials. (See Caristo Constr. Corp. v Diners Fin. Corp., 21 NY2d 507, 512; Aquilino v United States of Amer., 10 NY2d 271, 278-279; Frontier Excavating v Sovereign Constr. Co., 30 AD2d 487, 489; Eminon Acoustical Contrs. Corp. v Richkill Assoc., 89 Misc 2d 992, 994.) The provisions’ objective was to see to it that the funds intended for construction of an improvement are in fact used only for that purpose, i.e., that the financing money raised by the owner is actually used for the cost of the improvement (see *200 Lien Law, § 71, subd 1; § 2, subd 5), that the money paid or payable to the general contractor is used to pay the subcontractors, professionals, laborers and materialmen he has contracted with (see Lien Law, § 71, subd 2) and that the money paid or payable to subcontractors is used to pay the said persons he has contracted with (see Lien Law, § 71, subd 2). (See Aquilino v United States of Amer., supra, pp 275, 279; 1959 Report of NY L Rev Comm [hereinafter 1959 Report], pp 209, 214.) The problem sought to be remedied was the diversion of said moneys to other uses since such diversion had the potential and often actual consequence of leaving one or more of said protected persons partially or wholly unpaid. (See 1959 Report, p 214.) The device or remedy chosen to attempt to prevent this was the trust, with the funds provided by financing being made trust funds in the hands of the owner, funds paid or payable by the owner to the general contractor being made trust funds in the contractor’s hands and funds paid pr payable by the contractor to a subcontractor being made trust funds in the subcontractor’s hands.[5] (See Aquilino v United States of Amer., supra, p 275; 1959 Report, p 214.) The trust assets of each trust were to be applied first to the payment of their respective beneficiaries, and diversions to other uses were prohibited. (See Aquilino v United States of Amer., supra.) The penalty for a diversion was recovery of the diverted trust assets from knowing transferees, or damages against consenting trustees or knowing participants in the diversion. (See Lien Law, § 77, subd 3, par [a], cl [i]; §72, subd 1.)
Accordingly, in light of the above-noted legislative intent and statutory purpose (see McKinney’s Cons Laws of NY, Book 1, Statutes, §§92, 96) and the mischief to be remedied and the remedy chosen (see McKinney’s Cons Laws of NY, Book 1, Statutes, § 95), as well as the legislative history (McKinney’s Cons Laws of NY, Book 1, Statutes, § 124), particularly the cited 1959 Report of the State Law Revision Commission (see McKinney’s Cons Laws of *201 NY, Book 1, Statutes, § 125, subd b),[6] we find it appropriate to view the subject trust provisions as prohibiting diversions which deplete a trust fund to the detriment of its beneficiaries. In other words, a transaction will not be deemed an improper diversion as long as its ultimate effect is the application of the trust assets involved to the payment of beneficiary claims. It is also important to note in this regard that the trustee of a trust (i.e., the owner, contractor or subcontractor, respectively) has discretion as to who should be paid and how. (Lien Law, § 74, subd 1.)
In the case at bar, while the Gico-Beech payments ended up in the hands of Chase, they had the effect of being applied to the payment of Bellmore claims for money due it under its subcontract with Gico-Beech. Bellmore itself admits the subject payments were “for work done by [Bell-more] under *** [its] subcontract” and the checks themselves include references to Bellmore, including its approval of payment to Chase. Thus, while the pool of GicoBeech’s trust assets was reduced by these payments, there was a corresponding reduction in the claims against that pool. The other beneficiaries and potential claimants of the Gico-Beech trust were thus in no way harmed by the payments. As far as they were concerned, the effect on their claims was the same as if Gico-Beech had simply paid money directly to Bellmore for work done under its subcontract, a clearly proper use of trust assets (see Lien Law, § 71, subd 2, par [a]). The court therefore does not find any substantive importance in the fact the subject payments went directly to Chase rather than going first to Bellmore and then to Chase.[7]
Consequently, we find the payments here were proper vis-a-vis the Gico-Beech trust since they were “applied for * * * payment of claims of [a] subcontractor” (Lien Law, *202 § 71, subd 2, par [a]). They did not constitute transactions “by which any trust asset [was] *** applied for any purpose other than a purpose of the [Gico-Beech] trust”. (Lien Law, §72, subd 1.) Rather, the subject payments were applied for the benefit of the Gico-Beech trust by reducing claims against it to the full extent of the payments.
It would appear that the moneys transferred to Chase were also assets of the Bellmore trust since they constituted funds as to which Bellmore had rights of action for payment for work done under its subcontract with GicoBeech. (See Lien Law, § 70, subd 7, par [a]; Wade v Nassau Suffolk Lbr. & Supply Corp., 275 App Div 864.)[8] As such, it would further appear that its receipt by Chase as repayment of loans to Bellmore may have constituted diversions of Bellmore trust assets. (See Lien Law, §72, subd 1.) Nonetheless, the fact the said payments may not have been applied to a proper purpose vis-a-vis the Bellmore trust does not make them illegal diversions vis-a-vis the GicoBeech trust or its beneficiaries. Any potential trust liability arising from those payments would only be to the Bellmore trust beneficiaries. They are the only parties potentially harmed by the diversions since they are the ones who had their trust depleted with no corresponding reduction in the claims against that fund. By those payments going to Chase instead of to Bellmore, the latter’s capacity to fulfill its obligations under its contracts with its trust beneficiaries was reduced to the extent of the payments. The parties to whom Gico-Beech was obligated under its contracts, and who thus had potential claims against the Gico-Beech trust (and were thus beneficiaries of that trust), were not so potentially injured or adversely affected. If the assets of the Gico-Beech trust have become insufficient to meet the claims against it, it is not because of the subject payments.
Accordingly, the court concludes the payments by GicoBeech to Chase were proper applications of Gico-Beech trust assets and not illegal diversions. Any diversions that *203 may have occurred were of Bellmore trust funds and the only parties legally entitled to recourse with respect to these payments, or with respect to the settlement of the action involving them, are the beneficiaries of the Bell-more trust. Neither movants nor any of the other parties in the companion suits involving the subject project are such beneficiaries.[9] Thus, in the class of movants and the other said parties, there is not a “holder of any [Bellmore] trust claim” entitled to enforcement of the Bellmore trust or to any legal recourse as to the alleged diversions or irregular settlement. (See Lien Law, §77, subd 1.) That being the case, there is no legal basis on which to grant the relief requested by movants.

. This action has been denominated Action No. 4 in the caption of the instant memorandum-opinion and order. The actions denominated Action No. 1 and Action No. 2 are consolidated actions involving mechanic’s lien, contract and trust claims arising out of the same construction project as Action No. 4. The action denominated Action No. 3 has been joined for trial with Action Nos. 1 and 2 and involves mechanic’s lien and *198 contract claims also arising out of said project. We note Action No. 3 has the same index number, the same sole plaintiff (Plumbers) and includes the same defendant (Chase) among its defendants as Action No. 4. Nonetheless, it has apparently been treated as an action separate from Action No. 4 and there appears to be no reason to require a change. (See CPLR 2001.) In any event, while the motion here primarily concerns Action No. 4, we find it proper to include Action Nos. 1, 2 and 3 (which are presently before this court for trial) in the caption, since included in the further, related relief requested is a request for an accounting by Plumbers of the settlement proceeds it received from Chase which presumably would be for benefit of the claimants in the said other actions, as well as a request for a joint trial of Action No. 4 with said other actions (see p 198, supra).

. The papers also indicate that the payments to Chase were under an assignment to it by Bellmore of money due Bellmore under its subcontract with Gico-Beech. However, movants claim such assignment is invalid and of no effect because it was not filed as required by section 15 of the Lien Law. Nonetheless, the validity or invalidity of that assignment is not crucial to the determination of the instant motion and hence we make no finding with respect thereto (but see American Blower Corp. v James Talcott, Inc., 10 NY2d 282).

. Movants allege there is no filed discontinuance of said action.

. We note movants also contend that if Plumbers is unable to account for the $40,000 allegedly so received, then Chase is still liable therefor, i.e., Chase will then still be liable for the entire $80,340.50 allegedly diverted.

. The foregoing is only a general statement of the trust assets of each said party. Other types of payments are included therein, such as advances to contractors or subcontractors under assignments of money due or to become due under their respective contracts. (See Lien Law, § 70, subds 5-7.)

. The 1959 revision and restatement of the trust provisions was the last major amendment thereof, insofar as relevant here. (See L 1959, ch 696.)

. We observe this is exactly what occurred in Caristo Constr. Corp. v Diners Fin. Corp. (21 NY2d 507, supra) a case cited by movants in support of their motion. However, that case is clearly distinguishable from the situation here since in Caristo the action was brought on behalf of the beneficiaries of the subcontractor’s trust, not on behalf of the beneficiaries of the general contractor’s trust (the plaintiff there was the general contractor suing as subrogee of the subcontractor’s unpaid subcontractors and suppliers whom the contractor had paid pursuant to its obligation under a payment bond — see Caristo Constr. Corp. v Diners Fin. Corp., supra, pp 510, 511).

. It could also be argued the money was constructively received by Bellmore in its transfer to Chase since it constituted payment for work done under the Bellmore subcontract with Gico-Beech. (See Lien Law, §70, subd 7, par [a].)

. It is indicated that the claims of all beneficiaries of the Bellmore trust except one were paid off by Chase as part of its settlement of the subject trust action. However, that beneficiary is not joined with movants herein nor a party in any of the said companion suits.