**MASON TENDERS DISTRICT COUNCIL WELFARE FUND, et al., Plaintiffs,**

v.

**LOGIC CONSTRUCTION CORP., et al., Defendants.**

**No. 97 Civ 5212(LAK).**

United States District Court, S.D. New York.

May 26, 1998.

---

Lawrence A. Kravitz, Sally L. Schneider, Marc Alan Steier, Gorlick, Kravitz & Listhaus, P.C., New York, NY, for Plaintiffs.

Robert P. Herzog, New York, NY, for defendant Robert M. Fisher as Assignee of Logic Construction Corp.

Maria Makris–Gouvas, Trial Attorney, Marvin Kirslov, Deputy Solicitor for National Operations, Marc I. Machiz, Associate Solicitor for Plan Benefits Sec. Div., Karen L. Handorf, Counsel for Special Litigation, Washington, DC, for Amicus Curiae U.S. Dept. of Labor.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This case presents the question whether an assignee for the benefit of creditors may be sued under the Employee Retirement Income Security Act ("ERISA")[1] for contributions to employee funds which the assignor failed to make as required. In view of the novel character of the issue, the Court has invited and received the views of the United States Department of Labor, which is charged with enforcement and administration of the statute.

*Facts*

Defendant Logic Construction Corporation ("Logic") is a New York corporation formerly engaged in the construction business. It is a party to collective bargaining agreements ("CBAs") pursuant to which it was obliged to make monetary contributions and/or reports to the plaintiff employee benefit plans (the "Funds") and remit dues checkoffs and New York Laborers' Political Action Committee ("NYLPAC") contributions deducted from the wages of employees who authorize such deductions to the plaintiff union. The complaint alleges that a total of more than $250,-000 became due and payable, and remains unpaid, in respect of the period January 3, 1995 through June 30, 1997.

On January 23, 1997, Logic made a general assignment for the benefit of creditors to defendant Robert M. Fisher, who is sued solely in his capacity as assignee for the benefit of Logic's creditors. Fisher accepted and then filed the assignment with the Clerk of the Supreme Court of the State of New York, New York County, on January 27, 1997 in conformity with New York statute.[2] The state court promptly entered an order requiring the assignee to advertise for creditors to present claims.[3]

On or about October 8, 1997, the plaintiffs commenced this action against Logic, its principal Matthew Shelton, Sr., and Fisher. Default judgments have been entered against Logic and Shelton. The plaintiffs thus have reduced their claims for unpaid benefit plan contributions, dues checkoffs and NYLPAC contributions to judgment. Nevertheless, there remain pending in this Court plaintiffs' claims against the assignee, in his capacity as such, for breach of contract by failure to make contributions to benefit plans (count 3), to permit access to books and records (count 9), and to remit dues checkoffs (count 12) and NYLPAC contributions (count 15); violation

---

1. 29 U.S.C. § 1001 *et seq.*

2. N.Y.Debt. & Cred L. Art. 2 (McKinney 1990). The proceedings in consequence of an assignment for benefit of creditors take place under the authority of the state court. *Id.* §§ 15, 20.

3. *See id.* § 5.

of Section 515 of ERISA [4] by failure to make benefit plan contributions (count 6); and for prospective injunctive relief on contract and ERISA theories (counts 16 and 17). Fisher now moves to dismiss the claims against him for lack of subject matter jurisdiction, lack of personal jurisdiction, failure to join indispensable parties, failure to state a claim upon which relief may be granted and on other grounds. ·

The Secretary of Labor, as *amicus curiae*, has taken the position, in relevant part, that the assignee is not an "employer" within the meaning of ERISA, that ERISA does not preempt the New York assignment for benefit of creditors statute, and that the assignee may be sued to compel submission to an audit to the extent he is in possession of Logic's books and records. The Court is in substantial agreement.

### Discussion

The purposes of ERISA include protection of employee benefit plan participants and beneficiaries by requiring disclosure and reporting of pertinent information, establishment of standards of conduct for plan fiduciaries, and provision of appropriate federal remedies.[5] In order to achieve national uniformity, it adopted a sweeping preemption clause which, so far as it is relevant here, provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."[6] ERISA preemption, indeed, is so broad that the Supreme Court has made clear both that (1) federal court suit under Section 502(a) of ERISA is "the exclusive remedy for rights guaranteed under ERISA,"[7] and (2) the assertion of a state law claim that "relates to" an ERISA plan is sufficient to confer federal subject matter jurisdiction notwithstanding the failure of the complaint to rely on federal law as a rule of

decision.[8] It is against this background that this dispute must be considered.

### The ERISA Claims

#### 1. Unpaid Contributions.

The ERISA claim for unpaid plan contributions presents an overriding issue: is an assignee for the benefit of creditors subject to suit under ERISA for unpaid benefit plan contributions owed by its assignor? This appears to be a question of first impression, and the starting point is the language of the statute.

Section 515 of ERISA, upon which the plaintiffs rely, provides that:

"[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."[9]

Section 3 defines "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer."[10] Section 502 creates a right of action in favor of a plan fiduciary to enforce the terms of the plan.[11] Fiduciaries therefore may bring civil actions to enforce the terms and conditions of plans, but only against employers or those who act indirectly in the interest of employers.

There is no suggestion that Fisher, in his capacity as Logic's assignee, acts directly as an employer. Rather, plaintiffs contend that he became subject to Logic's duties under the CBAs by accepting the assignment. In substance, they argue that the assignee should be regarded as acting "indirectly in the interest of" Logic as employer. The Court finds little support for such a conclusion.

4. 29 U.S.C. § 1145.

5. *Id.* § 1001.

6. *Id.* § 1144.

7. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 144, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *accord, Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

8. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–64, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

9. 29 U.S.C. § 1145.

10. *Id.* § 1002(5).

11. *Id.* § 1132(a)(3).

■ To begin with, neither the law governing assignments, whether assignments in general or assignments for the benefit of creditors, nor the operative instruments assists the plaintiffs. As a general matter, the assignee of a contract does not become obligated to perform the assignor's contractual duties absent express assumption of that obligation.[12] More particularly, an assignee for the benefit of creditors simply "takes title to the debtor's estate and holds as trustee for all the creditors."[13] Such an assignment thus places the debtor's estate *in custodia legis*,[14] and plaintiff points to nothing suggesting that the assignee, who in substance is a trustee acting for the state court, becomes obligated to perform the assignor's unperformed contractual duties. Nor does the instrument of assignment assist plaintiff. It simply conveyed all of Logic's assets to the assignee, in trust for the benefit of creditors.[15] It provides that the assets are to be applied first to administrative expenses, next to claims entitled to preference by law, and the balance ratably to the claims of general creditors.[16] The assignee thus is acting in the interest of Logic's creditors, not Logic. Moreover, nothing in the instrument of assignment suggests that the assignee assumed any of Logic's duties under the CBAs except to the extent that the assignee undertook to marshal Logic's assets and apply them in accordance with law to the claims of its creditors.[17]

The cases in this Circuit construing the phrase "acting indirectly in the interest of an employer" lead to the same conclusion. In *Greenblatt v. Delta Plumbing & Heating Corp.*,[18] the Court of Appeals held that a surety on a bond issued to guarantee benefit plan contributions was not an "employer" within the meaning of ERISA. It wrote:

"We are not dealing with any type of agency or ownership relationship or direct assumption of the employer's functions with regard to the administration of a plan. We are confronted only with a contractual relationship separate from the collective bargaining agreement by which the surety guaranteed payment of a certain sum if the contractor defaulted on its obligations."[19]

It pointed out that Congress could not have intended a surety to be an "employer" because a surety "is not itself directly obligated under the terms of a collective bargaining agreement to make any contributions."[20] Moreover, the Court noted that treating the surety as an ERISA "employer" would produce the odd and doubtless unintended result of subjecting it to penalties under Section 502(g)(2)[21] despite the fact that it did not contribute to the employer's delinquencies.

---

**12.** *E.g., Lachmar v. Trunkline LNG Co.*, 753 F.2d 8, 9–10 (2d Cir.1985); *Sillman v. Twentieth Century–Fox Film Corp.*, 3 N.Y.2d 395, 401, 165 N.Y.S.2d 498, 503, 144 N.E.2d 387 (1957); *Langel v. Betz*, 250 N.Y. 159, 163–64, 164 N.E. 890 (1928); 6A N.Y.Jur.2d, *Assignments* § 73 (1997).

**13.** *City of New York v. United States*, 283 F.2d 829, 831 (2d Cir.1960); *accord, e.g., Freeman v. Marine Midland Bank–N.Y.*, 419 F.Supp. 440, 447 (E.D.N.Y.1976); *Century Factors v. Everything New, Inc.*, 122 Misc.2d 89, 90, 468 N.Y.S.2d 987, 988–89 (N.Y.City Civ.Ct.1983).

**14.** *Freeman*, 419 F.Supp. at 447; *Century Factors*, 122 Misc.2d at 90, 468 N.Y.S.2d at 989.

**15.** Answer Ex. A. The instrument of assignment is properly considered on this motion to dismiss, although it is not attached to the complaint, because the complaint relies upon and thus incorporates it by reference. *E.g., Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir.1991).

**16.** Answer Ex. A.

**17.** The fact that the CBAs purported to bind Logic and its successors and assigns is of no moment. The latter phrase could not bind an assignee for the benefit of Logic's creditors to render performance under the agreements. *See Brewster v. Kable News Co.*, 262 A.D. 894, 262 A.D. 967, 28 N.Y.S.2d 849, 850 (2d Dept.1941).

**18.** 68 F.3d 561 (2d Cir.1995).

**19.** *Id.* at 575–76. *See also Bleiler v. Cristwood Const., Inc.*, 72 F.3d 13, 15–16 (2d Cir.1995) (general contractor and its surety not "employers" with respect to employees of subcontractor); *Korea Shipping Corp. v. New York Shipping Association–International Longshoremen's Ass'n Pension Trust Fund*, 880 F.2d 1531, 1537 (2d Cir. 1989) ("employer" is "one obliged to contribute to a plan for the benefit of the plan's participants").

**20.** *Greenblatt*, 68 F.3d at 576.

**21.** 29 U.S.C. § 1132(g)(2).

So too here. The assignee has no ownership relationship with Logic. He is not a party to the CBAs, and he did not directly assume Logic's obligations under those agreements or its functions with regard to the administration of any of the plans. He may not properly be characterized as an agent because he is a trustee for Logic's creditors and therefore is not subject to Logic's direction and control, the essential characteristic of a principal-agent relationship.[22] And treating the assignee as an employer would subject Logic's insolvency estate to penalties, and thus disadvantage other creditors notwithstanding that those creditors did not contribute to Logic's delinquencies. The view that the assignee is not "acting indirectly in the interest of [the] employer" is supported also by *Levy v. Lewis,*[23] in which the Second Circuit held that the state liquidator of an insolvent insurance company was not an ERISA "employer."[24] The duties of the assignee here and of the liquidator in *Levy* are quite comparable.

Nor is it necessary to achievement of the purposes of ERISA to construe "employer" to embrace an assignee for the benefit of creditors. As reflected in its preemption clause,[25] ERISA was designed in part "to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans."[26] But there is nothing in the Act that suggests that Congress intended to alter long established insolvency law simply because the creditor is an ERISA plan.[27] Indeed, this conclusion draws strong support from the Supreme Court's decision in *Mackey v. Lanier Collec-*

*tion Agency & Serv., Inc.,*[28] which held that ERISA preemption does not bar application of a general state garnishment statute to participants' benefits in the hands of an ERISA plan despite the fact that garnishment would impose costs and burdens on it.[29]

Nothing in *Romney v. Lin*[30] warrants a different result. Indeed, *Romney* supports the conclusion reached here.

In *Romney,* the holder of an uncollected judgment against an employer that failed to make benefit plan contributions sought to impose personal liability for the unpaid contributions on one of the judgment debtor's shareholders pursuant to a New York statute[31] which imposed such liability on certain shareholders for wages and salaries, a term defined to include employer contributions to benefit plans. The Court of Appeals held that the state statute was preempted by ERISA both because it made explicit reference to ERISA plans and because that conclusion was necessary to achieve national uniformity of remedies.[32] In doing so, however, the Circuit distinguished *Greenblatt* and the Supreme Court's recent decision in *Peacock v. Thomas*[33] on the basis that the state causes of action there at issue "did not depend upon (i) the existence of an ERISA plan and (ii) the defendants' failure to comply with the obligations that ERISA imposes on employers (or others subject to ERISA)."[34] Moreover, it emphasized that the shareholder's attack on the state statute that sought to impose liability upon him was that it fell within the scope of ERISA's civil enforcement provisions, not that "it duplicated (or

**22.** Restatement (Second) of Agency § 1(1) cmt. b, § 14 (1958); *see also In re Shulman Transp. Enters., Inc.,* 744 F.2d 293, 295 (2d Cir.1984).

**23.** 635 F.2d 960 (2d Cir.1980).

**24.** *Id.* at 968.

**25.** 29 U.S.C. § 1144.

**26.** *New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 115 S.Ct. 1671, 1677–78, 131 L.Ed.2d 695 (1995).

**27.** *Cf. id.* at 1680.

**28.** 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988).

**29.** *Id.* at 831, 108 S.Ct. 2182.

**30.** 94 F.3d 74 (2d Cir.1996), *reh'g denied,* 105 F.3d 806, *cert. denied,* —— U.S. ——, 118 S.Ct. 263, 139 L.Ed.2d 189 (1997).

**31.** N.Y.Bus.Corp.L. § 630.

**32.** 94 F.3d at 79–80.

**33.** 516 U.S. 349, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996).

**34.** 105 F.3d at 809.

conflicted) with a *judgment collection* provision found in ERISA." [35]

*Romney* thus demonstrates that ERISA, to the extent relevant here, provides uniform federal rules as to who is liable (e.g., "employers") and to what extent (e.g., unpaid contributions plus statutory damages and attorneys' fees) and a federal forum for determination of liability. It is not concerned with the means by which ERISA liabilities are collected. Hence, it does no violence to the policies of ERISA to hold that an assignee for benefit of creditors of an ERISA employer is not himself an employer and thus not subject to ERISA liability. The ERISA concern is satisfied once the beneficiaries, here the Funds, have the opportunity to litigate their claims against the employer in federal court. That the effect of this Court's holding is to compel them to seek to enforce that liability by interposing a claim against the assets in the assignee's hands in the state court proceeding is of no moment.

Finally, it is difficult to see any advantage that the plaintiffs would gain were their construction adopted. They already have a judgment against Logic for the full amount of the unpaid obligations plus statutory penalties on the ERISA contributions and attor-

neys' fees. They can present this claim to the assignee, who is obliged by law to accord that claim any priority to which it is entitled and, absent any priority, to distribute assets remaining after payment of priority claims ratably among the general unsecured creditors. As they have sued the assignee only in his representative capacity, a judgment against the assignee would put them in no better position.

The Court holds that the assignee for the benefit of the creditors of Logic, sued in his capacity as such, is not an "employer" within the meaning of ERISA. In consequence, the ERISA claims to recover unpaid benefit plan contributions from him fail to state a claim upon which relief may be granted.[36]

### 2. Access to Books and Records.

The claim for an order requiring the assignee to permit plaintiffs to audit Logic's books and records, to whatever extent they are in the assignee's possession, is asserted only under state law. ERISA, however, preempts all state laws that relate to ERISA plans [37] and creates federal subject matter jurisdiction over all claims for relief

---

**35.** *Id.* at 810 (emphasis in original).

Plaintiffs point out that Section 15 of the Debtor and Creditor Law affords a priority to certain wage claims in the distribution of assets held by an assignee for the benefit of creditors and that the definition of "wages" in that statute parallels that contained in the Business Corporation Law that caused the Circuit to hold that the claim against a shareholder for unpaid contributions owed by a corporation was preempted. Assuming *arguendo* that *Romney* requires the conclusion that Section 15, to the extent it purports to afford a priority to claims for ERISA benefit fund contributions, is preempted by ERISA, it certainly does not follow that ERISA preempts state law generally applicable to assignments for the benefit of creditors.

**36.** The Secretary of Labor, as *amicus*, endorsed the Court's proposed resolution that it adjudicate the insolvent employer's liability to the Funds and that the enforcement of any judgment occur in a subsequent proceeding in federal bankruptcy court or in state court pursuant to the Debtor and Creditor Law. The Secretary posited also, somewhat inconsistently, that the assignee, in his representative capacity, is a party who should be

named under Fed.R.Civ.P. 19(a) on the theories that he (1) has an interest in the outcome of this action, and (2) holds title to the trust *res* —the corpus of the trust created by the assignment. The Court disagrees. An assignment for the benefit of creditors is distinguishable from a federal bankruptcy in that the debtor-assignor remains liable for the unpaid balance of the debt. *Freeman,* 419 F.Supp. at 447. Because the assignor remains liable, the assignee's responsibility is limited to marshaling and distributing the assets, not assuring that all debts are satisfied. Moreover, because the assignor remains liable for all of its debts, it is irrelevant that for purposes of distribution the assignee holds title to the *res*. To the extent that the *res* is insufficient to satisfy the debts, the creditors still will have claims against the assignor. The analogy to the executor of a deceased's estate is inapposite. The executor of a decedent's estate, unlike the assignee, is the only entity charged with satisfying the debts of the estate. *In re Starbuck's Executrix,* 251 N.Y. 439, 445, 167 N.E. 580 (1929). As the assignee has no interest in the outcome of this action and as his possession of title to the *res* is immaterial to the assignor's liability, he is not a necessary party under Fed.R.Civ.P. 19(a).

**37.** 29 U.S.C. § 1144(d).

relating to such plans.[38] Hence, the question is whether ERISA gives the plaintiffs the right to such relief against the assignee.

ERISA does not explicitly require plan trustees to conduct audits or employers to permit them. Nevertheless, this Court does not write on a clean slate.

In *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.,*[39] the Supreme Court held that ERISA, far from precluding plan trustees from conducting audits pursuant to CBAs permitting them to do so, supported such a right as a natural incident of their common law-derived ERISA obligation to preserve and maintain trust assets.[40] *Central States* was followed by *New York State Teamsters Conference Pension and Retirement Fund v. Boening Brothers, Inc.,*[41] in which the district court granted a permanent injunction requiring employers who had agreed to make contributions to ERISA benefit plans to submit to audits by the plans' trustees despite the fact that the employers had not agreed to submit. On appeal, our Circuit affirmed the injunction, extending the rationale of *Central States* to include employers who were not contractually obliged to permit audits.[42]

ERISA itself must have been the basis for the affirmance of the injunction in *Boening Brothers*. To begin with, the employers in *Boening*, unlike those in *Central States*, were not subject to any contractual obligation to submit to audits. Even if they were, ERISA preempts state laws relating to ERISA plans, so any contractual or other state law source of such a duty would have been immaterial. Further, *Boening* followed *Central States* in concluding that the trustees' re-

sponsibility and authority to conduct the audits derived from ERISA's "invo[cation of] the common law of trusts."[43] Thus, this Court construes *Boening* as having held that ERISA creates an obligation on the part of employers who agree to contribute to employee benefit plans to submit to audits by plan trustees, at least in the absence of contrary language in the relevant contractual documents. The fact that the source of the employers' obligation to submit to the audits is the trustees' responsibility and authority to preserve and protect plan assets, moreover, is quite significant for this case. It implies that the duty to submit to reasonable audits is a product of the trustees' function, not of the subject's status under the statute. In any case, Fisher, as the trustee for the benefit of Logic's creditors, is obliged to furnish information relevant to the trust property to the beneficiaries of the trust, including the Funds.[44] Accordingly, the Court holds that the assignee is subject to suit under ERISA to compel him to submit to an audit to the extent that he possesses relevant records of Logic.

### The Remaining State Law Claims

As previously indicated, the expansive nature of ERISA preemption creates federal subject matter jurisdiction over nominally state law claims as long as they relate to ERISA plans. In count 3 and the portion of count 16 dealing with unpaid contributions, the plan fiduciaries seek relief on state law theories precisely parallel to that available under ERISA.[45] Both are within the subject matter jurisdiction of this Court and are preempted by the ERISA. Those claims

---

38. *E.g., Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. at 65, 107 S.Ct. 1542; *Pilot Life Ins. Co.,* 481 U.S. at 54–55, 107 S.Ct. 1549.

39. 472 U.S. 559, 105 S.Ct. 2833, 86 L.Ed.2d 447 (1985).

40. *Id.* at 571–74, 105 S.Ct. 2833.

41. 92 F.3d 127 (2d Cir.1996).

42. *Id.* at 132–33.

43. *Id.* at 131.

44. RESTATEMENT (SECOND) OF TRUSTS § 173 (1959) ("The trustee is under a duty to the beneficiary to

give him upon his request at reasonable times complete and accurate information as to the nature and amount of the trust property, and to permit him or a person duly authorized by him to inspect the subject matter of the trust and the accounts and vouchers and other documents relating to the trust.").

45. Count 3 seeks recovery of unpaid contributions, relief which is available under 29 U.S.C. §§ 1132(g)(2) and 1145. Count 16 seeks, in part, injunctive relief with respect to recovery of unpaid benefits, relief which is available under 29 U.S.C. §§ 1132(a)(3) and 1132(g)(2)(e).

therefore fail to state a claim upon which relief may be granted.

 Counts 12, 15 and the remainder of count 16 stand somewhat differently. They seek recovery on behalf of the unions alone for unpaid dues checkoffs and NYL-PAC contributions. While the claims also arise out of the CBAs, they do not relate to employee benefit plans in any way and therefore do not fall within the ERISA preemption jurisdiction. But that is not the end of the matter. Section 301 of the Labor Management Relations Act,[46] upon which the ERISA preemption provision was modeled, "pre-empts any 'state-law claim [whose resolution] is substantially dependent upon the analysis of the terms of an agreement made between the parties in a labor contract.'"[47] The scope of preemption is so broad that it "displace[s] entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'"[48] In consequence, this Court has jurisdiction over counts 12, 15 and the remainder of 16. Inasmuch as the assignee, for the reasons discussed above, did not succeed to Logic's obligations under the CBA, however, these claims must be dismissed on the merits.

*Conclusion*

ERISA was intended to create a uniform national scheme determining who is subject to liability for, among other things, unpaid benefit plan contributions and to create an exclusive federal remedy for the vindication of such claims. When the plaintiffs obtained their default judgment against Logic, they exhausted their rights under ERISA with respect to unpaid benefit plan contributions and are left with the mechanisms generally available to creditors for the enforcement of that judgment. As Congress elected to make only "employers" liable for such contributions, an "employer's" assignee is not himself subject to suit under the statute. Plaintiffs' remedy is either to file a claim pursuant to the state court order and to obtain whatever distribution is available to them by that means, or to seek to place Logic in bankruptcy and proceed before the bankruptcy court. On the other hand, the assignee is obliged to permit access to Logic's books and records to the extent they are within his possession, custody or control.

The motion of Robert M. Fisher, as assignee, to dismiss the complaint is granted, except as to the ninth claim for relief, on the ground that the complaint fails to state a claim upon which relief may be granted.

SO ORDERED.

---

**46.** 29 U.S.C. § 185.

**47.** *Pilot Life Ins. Co.*, 481 U.S. at 55, 107 S.Ct. 1549 (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985)).

**48.** *Franchise Tax Board of State of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983) (quoting 29 U.S.C. § 185).